Kevin Todd Butler is here for the appellate Jeffrey Slanker is here for the appellee's Mr. Butler you may begin when you're ready. Good morning and may it please the court I'm Kevin Butler and I represent Ms. Race mother of Ashley Seaford and next Ken of Ms. Seaford's minor daughters. There's one central fact in this case that is so obvious that failure to notice it is going to have a serious impact on the public's perception of fairness and integrity in the judicial process itself. The central fact is that Ashley Seaford was seriously ill with endocarditis when she was brought to the Bradford County Jail and put in the care of Nurse Starr and Sergeant Gouge. She was literally deathly ill when she was brought to jail and she needed to be in the hospital then. She did not need to be in the jail and when Nurse Starr finally let her see the doctor almost two weeks later the doctor and the doctor sent her to the hospital by that time it was too late. She was an organ failure, she was intubated, she was dying and what I'm here today is to ask for relief from Nurse Starr and Sergeant Gouge's malicious and intentional disparagement and smearing of her character both in jail and at trial in violation of the court's order eliminated excluded circumstances surrounding Ms. Seaford's arrest. Well let me tell you the concern that I have. She did not prevail at trial. She did not. And we've got a lot of issues here. We've got seven issues and with regard to all of the issues except for the evidence regarding her prior drug use, it doesn't seem that there was any contemporaneous objection raised to the errors that you allege the court committed. No contemporaneous objection? Your Honor, with respect to the order in limine, the order in limine was definite and clear and the trial judge in his order . . . Yeah, I'm not talking about that because there was a motion in limine. I'm talking about all the other, you know, the testimony of Alexander Steiner, the evidence during the closing argument, the misstatement of law concerning damages to the jury, the evidence with regard to Sergeant Good as a witness. I mean there was no contemporaneous objection to any of that. Your Honor, the whole strategy of the defense in this case was to disparage the character of this woman who was dying in jail. That was the whole goal of it, the whole focus of their defense. All of the basis of the appeal that are stated, that fact is included or it becomes a part of all of those. The trial counsel was in a position where right from the very beginning of the defendant's opening argument, right from the very beginning they launched right into a violation of the order in limine, the definitive order in limine. That characterized, that set the tone for the whole trial and it put the plaintiff in the position of having to make the decision of do I object and call attention again and again to these violations or to this fact that's a harmful and prejudicial fact that the trial judge had said in his order in limine, it's highly prejudicial and it's highly prejudicial because on the one hand it was not relevant. He said in his order it's not relevant at all because the question was not what caused her endocarditis. That was never the question in the case. As I understand your argument, the evidence was relevant, it's just it was prejudicial under Rule 403. Is that . . . No, sir. Your argument is that it's not relevant? It was not relevant and the judge said that it was not relevant. He said that it was not relevant and under Rule 103, under Rule 103 it has an affirmative duty to conduct the trial in a manner that that irrelevant evidence is not admitted to the, not admitted in front of the jury. You filed, your client filed a motion in limine seeking to exclude evidence relating to intravenous drug use, but the district court denied the motion concluding that Ms. Seyfried's IV drug use is relevant and significant to much of the evidence that will be adduced at trial in part because the defendants argued it was the cause of the endocarditis and the reason the hospital declined to give her a second mitral valve replacement. Well, the request, the motion to eliminate, correction, the motion to exclude evidence of the IV drug use, that was granted, but the judge did state in the footnote, he said that it shouldn't be, it's not admissible for every issue and . . . It is the reason why she had the endocarditis. It is the reason why she was, the hospital denied, the only treatment that was going to save her was going to be a second mitral valve replacement and the hospital denied it because she continued to use drugs after the first mitral valve replacement. There is no, there's never been any dispute that IV drug use probably caused the endocarditis. There was, and there's really no, there was no firm evidence other than the continued reference to, there was no affirmative, firm and conclusive evidence that IV drug use is what caused the second incident. I mean, it's probably the case, probably the case, but it was never disputed. The cause of the endocarditis was never disputed. It never really was put in the issue and it never was challenged, but the way they brought evidence of the drug abuse in was to disparage her character, to disparage her character and to . . . That's what was going on when . . . Every time they did that during the trial, they should have been, should have stood up and objected. I object, Your Honor. They're going beyond your order on the motion in limine. This is, you know, they can put on evidence that the drug use caused her death, but what they're doing is you should rule against her because she's a drug addict. There was a lot of evidence to that effect and every time there was evidence to that effect, you should have stood up and objected. But it was always built around the circumstances of the arrest. The objectionable use of IV drug use, the objectionable use of evidence of IV drug use in the trial was always centered around the circumstances of the arrest. We go through, there's about seven or eight spots in the record and each time it was centered around the . . . Your argument is that my motion in limine covered that so I didn't need to stand up and object because my motion in limine constituted my objection. It did. It was a standing objection. That's your argument. A definitive motion in limine is a standing objection. Counsel, a motion in limine is always tentative. It's pretrial and it's tentative because you don't know how the trial is going to unfold. So what may appear to be inadmissible prior to trial becomes admissible. So you can't just plain stand, in my view, just stand on a motion in limine which is tentative. You know what I mean by that? I understand. It's provisional. I understand, Your Honor, but didn't . . . The Supreme Court of the United States says that. But isn't that what the 2000 Amendments to Rule 103 meant, 103B? When there's a definitive order on an evidentiary ruling, once you've got that definitive order, you don't have to preserve that after that. It's there. You don't have to proffer evidence in order to say that you should be able to bring it in and you don't have to object to it to be able to keep it out. And the problem with standing up and objecting, once you've got that, is that every time you stand up and object . . . Listen, trial lawyers know that . . . There was testimony, was there not, that she had drugs in her system the day she died. Judge, that's not true. That is not . . . Didn't the doctor say she had opioids in her system? Dr. Stemmer tried to get . . . He put that into evidence. He put that into evidence, but it was in his testimony. But then he was impeached about that. He was impeached about that and had to take that back at trial when he said that, no, I was wrong about that. She did not have drugs in her system when she was . . . She didn't take drugs in jail. She was clean when she went to the hospital. When she went to the hospital, when they finally let her go to the hospital, she was clean. In short, yes, I'm understanding that there's this problem with not objecting. I understand that, but trial counsel know that . . . We wrote an opinion which says that district judges, you make a provisional ruling on an evidentiary issue prior to trial and we're going to . . . Without contemporaneous objections going on during the trial, we're going to reverse a judgment. I'm not sure I understood the question, Your Honor. Well, you can't have a model in which you say to the district judge, make a tentative ruling. By definition, it's a tentative ruling. The Supreme Court of the United States says a ruling in limine is provisional. If you're going to say to district . . . If we say to district judges, if you make a tentative ruling prior to trial and it turns out the evidence is admissible and there's no objection, we're still going to reverse the judgment. On the ground that the objection was preserved over and over and over again and you committed plain error. My understanding of Rule 103B is that . . . My understanding of that rule of evidence is that . . . I understand that. It's not. When it's a definitive ruling, it's not tentative. It's not tentative. Now, if that's the case, then I would say that that order would need to be specifically withdrawn and the court would need to let us know at trial that, listen, I have withdrawn this motion in limine and it's not binding anymore. That didn't happen either. But you're also arguing that the other side exceeded the scope of the trial court's ruling and were using it for different purposes and there was no objection made that preserved that issue. There was no way to object to that. Sure there is. The problem with objecting to it, though, is every time you stand up and object to it, you're calling the jury's attention back to it. That's a strategic decision, but you are running into a waiver problem. I'm way past my time, but the purpose of the motion in limine is so that the trial counsel is not put upon to have to make that strategic decision with respect to evidence that just absolutely should not come in and the judge has already ruled that way. All right. Thank you. Thank you. Mr. Butler, we'll hear from Mr. Slanker. Thank you, Your Honors, and may it please the court. My name is Jeff Slanker. I'm here with my law partner, Michael Spellman. I have the pleasure of representing the appellees in this case today. They're Star and Sergeant Cooch. My friend, Mr. Butler, on the other side, made a remark. He made a remark. He said that standing up and objecting, that's a decision for trial counsel to make. Juries might perceive counsel to be obstreperous. Well, trial lawyers know that through the course of, here, a five-day trial, you make thousands of strategy decisions on a split second, whether or not to object to something, whether or not to let something in, whether or not to move from this trial, what type of request for a curative instruction you're going to make. The point of the contemporaneous objection rule is to put these issues before the trial court, to allow the trial court to make a decision and to correct any error within his discretion, to avoid costly retrials and to avoid situations where counsel has a perverse incentive to test a verdict, to sit on objections, only to raise them through a new trial. What we would submit is that . . . He didn't use the magic words, but trial counsel can say, Your Honor, I'd like to have a standing objection to this, to the admission of this evidence of prior drug use. Your Honor, what I would say, and I think if I'm misunderstanding you, please correct me, but getting to the motion and limiting orders, I know that's been a focus of the discussion today, on the order related to references to Ms. Seyfried's drug use. That order did deny the motion of limiting. It said it was relevant. It said it was relevant to multiple issues. As Judge Branch pointed out, it was relevant to the causation issues and why the surgeons at U.S. Shands . . . The concern in this case is not that it was relevant. I guess it was relevant, but whether or not it was a violation of Rule 403, that it was prejudicial, the nature of it. I don't need any probative value it had because it seems like during the course of the trial, what the defendants in this case kept arguing that this was a drug addict, ladies and gentlemen. Her real argument is that the jail was deliberately indifferent to my claim. It's the focus of the trial. She's a drug addict. That's why you should rule against her on a deliberate indifference claim. That's the case. There's a difference between saying she died because she was on drugs at the time that she was brought into the jail. There's a difference between that and she's a drug addict. That evidence, to me, seems prejudicial. I apologize for interrupting you there, Your Honor. It's relevant on the defense side in terms of that ultimate causation issue because what the surgeons at UF Shands found was that there's evidence of continued drug use and in that situation, they're not going to provide surgical intervention, which would have been a new heart valve. It was the plaintiffs that their theory of the case was that the appellees were biased against her because they labeled her drug seeking, because they considered her a drug user. That was the plaintiff's theory of the case, but I think getting to the court evidentiary issue in terms of whether the motion in limine preserve that issue and didn't require contemporaneous objection during the trial, the order denying the motion in limine said, in a footnote, it said that the court will entertain objections to cumulative evidence, to evidence that's deemed prejudicial. It's relevant, but if it becomes a feature of the case, I'm going to reconsider it. Trial counsel made that strategic decision to not bring it to the court's attention. This record, we don't even have an exercise of discretion to determine if it's been abused or not. What I'll say, and I want to make a comment too about the motion in limine as directed towards the circumstances of Ms. Seafried's arrest because there was no help that was granted as to the admission of the arrest report. What we assert and what we argue here today, and that type of argument wasn't even made in the initial brief, that that was sufficient to preserve the objection. Judge Schofield, I agree with your observation that motion in limine rulings are tentative. They're routinely renewed at trial, but if you look at the  If the court changes its initial ruling or if the opposing party violates the terms of the initial ruling on a motion in limine, objection must be made when the evidence is offered to preserve the claim of error for appeal. The error in any such situation occurs only when the evidence is offered and admitted. That was a proposition that was affirmed by this court in ML Healthcare Services v. Public Supermarkets, 881 F. 3rd, 1293. Judge Schofield, you're exactly right. You obtain a tentative ruling on an evidentiary issue through a motion in limine. Well, it's expressly provisional in a case like this in which drugs are throughout the case. Before the arrest, as I understand it, the first valve operation was open heart surgery. Was it not? That's what I understand, Your Honor, yes. Okay. Her vessels would not take a valve operation when she died before they put the valve in through the vessels because the vessels were basically gone, so they had to do another open heart surgery. That's what I understand. I cannot imagine that at some point in time a drug's use and everything else, and she showed the physical signs of drugs, as I understand it, on her body. Yes, Your Honor, it was noted. So it's going to creep into the case. That's why I say, in my view, that this in limine ruling was absolutely provisional. Your Honor, I agree with everything you just said. There was evidence presented that the surgeons at the University of Florida in Gainesville had noted that there was evidence of continued drug use that was in our expert's report. What the trial judge said is, look, I think this is relevant. It's relevant to causation issues. The plaintiff herself has proffered this theory of the case where she says that she was labeled drug seeking, and that was because there was a bias against Ms. Seyfried because she was a drug user, and that means the appellees declined to provide medical care for me in deliberate indifference to my constitutional rights. This has been a feature of the case that has been made by the plaintiff herself. It was part of her theory of the case. We've cited in our papers, and I'm not going to belabor the court with the plaintiff herself is bringing this information before the court to make an argument that this is our theory. This is how we think we should prevail and why we think there was some bias that resulted in this deliberate indifference. I absolutely submit to this court that it is provisional, and there's nothing more clear of the fact that the ruling was not definite and was not encompassed within the understanding of 103B than that footnote, which says I'm ruling on this now because I think it's relevant based on how you all have brought this case to me in the pretrial papers and how it's been briefed, but object again. If it becomes an issue at trial, lodge an objection, lodge a contemporaneous objection, and I'll rule on it then. We submit, the appellees submit, that this case and this appeal, I should say, is the attempt by the plaintiff's lawyers to re-litigate these strategy decisions and re-litigate a decision not to make a contemporaneous objection. As I've said, there's perverse incentives to a ruling that really countenances that type of behavior. Had there been an objection made, there's a friend on the other side referenced a statement made in the opening statement that he found objectionable. Well, stand up. You make a contemporaneous objection, you move for a mistrial, parties could have recessed and a new jury could have been picked if it was deemed so need for a new trial, and that could have conserved an incredible amount of resources. A ruling that says you don't have to satisfy your obligations under the contemporaneous objection rule really, and cases of this court have said it, kind of fly in the face of those core purposes of bringing these issues before the trial judge to exercise discretion upon which this court can determine whether or not there's been an abuse of that discretion. Second, it prevents counsel from sitting on an objection, testing a verdict and sandbagging the other side with the motion for a new trial on unpreserved issues. We'd submit that really the vast majority, nearly all of the issues that were presented in the evidence here were simply not preserved by contemporaneous objection. I'm happy to answer any other questions that the panel has. I can go through each of the different categories of evidence that they believe constitutes an abuse of discretion. I understand that bias, they didn't do anything because she's an addict, was in the case. Your Honor, it's my understanding that that was the plaintiff's theory of the case. Mr. Butler can tell us how you can keep out of evidence any history of drug use. Yeah, Your Honor. If that was the reason why they didn't act. Your Honor, what I would say too is my view of the case and putting myself in the place of, well, what if I was the plaintiff's lawyer, what kind of case would I try? I would maybe want that evidence related to the circumstances of the arrest into the record if my argument is they labeled her as a drug user, they labeled her as an addict, they didn't want to give her medical care because they had this bias against her. I think that would only support . . . There are cases, lots of cases, in which you have an alcoholic or you have a drug user. I think that would support it. That becomes indifference under the Eighth Amendment. Sure. Absolutely. I'm not . . . I wouldn't be surprised if there were such cases and they proceeded on that theory, they presented that evidence and the jury . . . Of course, this wasn't an Eighth Amendment case, so . . . Fourteenth Amendment, correct, Your Honor. I mean, just different. Well, Your Honor, my understanding . . . It was Eighth Amendment away, yes. Correct. Your Honor, what I would say, Judge Schofield, is that that was a theory that they tested. That was a theory they submitted to the jury. The jury didn't find for them, didn't find for the plaintiff in this case. The jury found that Sergeant Gouge wasn't even aware of the serious medical need that Ms. Sievery had. I think that that's worth pointing out, too. The jury found that she had a serious medical need. I don't think . . . the Constitution is blind to why the serious medical need is there in the first place. It's blind to what the condition is that leads to the source of the deliberate indifference. What we think that would be really anathema to this Court's precedent into the contemporaneous objection rule is to say . . . is to countenance basically what my friend on the other side, the plaintiffs are asking here in this case, which is go to court, go to trial, try a case based on a theory where you're proceeding, much like you're describing, Judge Schofield, where you're saying there's evidence of this bias. Sit on objections to the introduction of evidence that the trial court has explicitly advised you in an order on a motion of limine and said, if this becomes cumulative, if this becomes prejudice, renew your objection and I'll consider it at trial, much in the way of the provisional explanation that you've been referring to, Judge Schofield. Not do that and then move for new trial after a verdict has been reached. That's testing the verdict and it's completely out of step with the contemporaneous objection rule and finds no support in any aspect of Rule 103. I know I've already described the advisory committee notes and those that speak to exactly what Judge Schofield, what you're saying, which is if an order on a motion of limine is violated, if a judge violates it, if a party violates it, you've got an obligation then to get up, stand on your objection and bring it to the court's attention. I think it's really telling what we've heard today, which is, well, objecting is a strategy decision. It is a strategy decision, but it's required to preserve error before this court. To the extent that the trial court even got a chance to exercise discretion, I don't think that any precedent in this court's cases or certainly not in the papers would support that that discretion was abused at all in leaving the jury's verdict undisturbed. Therefore, we'd ask for affirmance in all respects. Thank you, Your Honors. Thank you, Mr. Slanker. Mr. Butler, you've reserved some time. Thank you, Your Honor. A motion in limine is also a strategy decision. If a definitive ruling on a motion in limine is not an enforceable order that has any force of teeth . . . Mr. Butler, don't take my dialogue with counsel too far. You can have a motion in limine, say there's a document that a party wants to introduce and the other party wants to keep it out. Whether or not it can come in or out is obvious. The court says, oh, I deny the motion or I grant the motion. That's easy to preserve that. This is a case in which the trial . . . the drugs that permeate this case from beginning to end, the realistic it does. You want to try it so it doesn't. The circumstances of the arrest, Your Honor, the circumstances of the arrest, the active ongoing drug use that comes . . . Well, doesn't the jailer know why she was arrested? I suppose the jailer did know. I suppose the jailer would know. She had a preliminary hearing or an initial appearance and they put her . . . they granted bail, but she couldn't post her bond. She couldn't post her bond. But she knew that she . . . let me say Nurse Starr knew or probably knew that she had somebody who was in jail on the list. She had a drug addict on her hands. She had a drug addict, but she had no evidence of drug seeking. I mean, the thing was it looked like . . . you mentioned before, you said it looked like she was an active drug user, but she had all of the symptoms were symptoms of endocarditis, the symptoms that she was manifesting in jail. But drug addicts manifest all kinds of symptoms. We can take judicial notice of that just about. This one had a heart card. This one had a heart card and she had an open chest surgery scar and she was complaining of chest pain. She had nausea. Where they got the drug seeking, the only place they sort of had some area of saying, oh, she's being dishonest about what she's doing. She said, what was it she said, I haven't been able to eat. And she said, oh, well, if you haven't been able to eat . . . She said, I haven't been able to eat. She said, if you haven't been able to eat, then you can't have anything for your pain. You can't have any meds. Well, she says, well, I did eat, but I've been nauseated and I was throwing up. She said, well, if you're nauseated and you're throwing up, you can't have any meds. And so it's there. She's begging for help and that bit there, they used and held onto that and says, okay, drug seeking all the way across the top. While she's not drug seeking, she's dying of endocarditis. She needed to go to the hospital. My concern, though, was about if we're going to say that a motion in lim . . . The violation of the motion in limine up at the beginning of the opening argument was so blatant, so brazen, that the question is whether it should trial counsel have moved or should trial counsel have objected or should trial counsel have moved for contempt.  And if a motion in limine is not going to have any more force than that, if it's not going to have any more . . . Especially a definitive, conclusive motion in limine that says you will not bring in evidence of the pretrial . . . You will not bring in evidence of the circumstances of the arrest, if that's the case, then really there's no point to be making motions in limine. Because when you make a motion in limine, what you're doing is you're showing the other side of your hand. You're showing the other side of your hand and you're inviting them to violate it in their hopes that they'll get the evidence in even though the court said it's not admissible. It really says don't make motions in limine if we are going to not let them have any teeth whatsoever. And that's what I feel like is being said right here is that the contemporaneous objection . . . I understand when you're saying contemporaneous objection give the trial court opportunity to fix it, but when it's a definitive, conclusive, clearly stated motion in limine that these matters are not going to come in and they do it anyway. They do it again and again and again with every, almost, not every witness, but very nearly every witness, they said, did you know that she was arrested for drug use? Regardless of whether they knew or not. So, anyway, Your Honor, that's where we are and I'm . . . We have your argument, Mr. Butler. Sir. We have your argument. Thank you. Thank you. Thank you, Mr. Slanker. The next case is Christopher . . .